# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

TAQIYYAH and TAMEER MILLER as : 
ADMINISTRATORS of the ESTATE OF :
LAWRENCE BRINKLEY :
  :
Plaintiff, :
  : CIVIL ACTION NO:
vs. :
  :
UNITED STATES OF AMERICA :
  :
Defendants. :

## COMPLAINT

## I. INTRODUCTION

Plaintiffs brings this Federal Torts Claims Act action against the United States of America seeking compensation for the suffering and untimely death of their father as a result of the negligence of employees of the United States at the Federal Correctional Institute at Fort Dix.

## II. JURISDICTION

1. This Court has jurisdiction pursuant to the Federal Torts Claims Act, 28 U.S.C. §1346 and 28 U.S.C. §2671, et seq.

1

2. Venue is proper in the United States District Court for New Jersey under 28 U.S.C. § 1402(b).

## II. PARTIES

3. Decedent Lawrence Brinkley was at all times relevant to this complaint housed at the Federal Correctional Institute at Fort Dix (FCI Fort Dix). He died on January 05, 2018.

4. Plaintiff Taqiyyah Miller, the daughter the decedent Lawrence Brinkley, was appointed Administrator of the Estate of Lawrence Brinkley by the Philadelphia Register of Wills on May 22, 2018. She brings this action in her capacity as Administrator of the Estate for the benefit of Mr. Brinkley's heirs.

5. Plaintiff Tameer Brinkley, the son of the decedent Lawrence Brinkley, was appointed Administrator of the Estate of Lawrence Brinkley by the Philadelphia Register of Wills on May 22, 2018. He brings this action in his capacity as Administrator of the Estate for the benefit of Mr. Brinkley's heirs.

6. Defendant United States of America is an appropriate defendant under the Federal Tort Claims Act.

**STATEMENT OF FACTS**

7. The deceased Lawrence Brinkley was residing in Philadelphia in 2016 when he was sentenced in the United States District Court for the District of Delaware to serve a 48-month prison sentence.

8. In December 2016, Mr. Brinkley was transferred to FCI Fort Dix, a low security facility to serve his sentence.

9. In May 2017, Mr. Brinkley noticed blood in his stool and began to feel some pain and discomfort.

10. Mr. Brinkley reported these symptoms to Bureau of Prisons (BOP) medical personnel at FCI Fort Dix.

11. According to Mr. Brinkley's handwritten journal he noted that he had been reporting BOP medical personnel multiple times in May, but his health concerns were disregarded.

12. No diagnostic testing was performed in May.

18. During the month of June 2017, Mr. Brinkley grew progressively weaker, and was losing weight.

19. Mr. Brinkley received no diagnostic testing or treatment during the month of June 2017.

20. On July 02, 2017, Mr. Brinkley's son Tameer Miller visited him and due to the severe pain suffered by during the visit Mr. Brinkley terminated early. Mr. Brinkley requested that Tameer contact his sister to follow up with Fort Dix to request urgent & immediate medical attention and treatment.

21. On July 03, 2017, Mr. Brinkley fainted and was taken to Robert Woods Johnson University Hospital Hamilton diagnosed with hemorrhoids. Mr. Brinkley received ibuprofen, miralex and ointment for his pain. and advised to follow up with a specialist in 1 day. No diagnostic testing was performed. Upon return to FCI Fort Dix, Mr. Brinkley was seen by Steven Esposito, ML

22. On July 5, 2017, Mr. Brinkley's sister sent an email to Fort Dix requesting that it provide full medical evaluation and appropriate medical treatment to Mr. Brinkley.

23. On July 6, 2017, Fort Dix responded that due to privacy concerns Mr. Brinkley's medical history/concerns could not be discussed.

24. July 13, 2017 Mr Brinkley was once again transported offsite to Lourdes Medical Center of Burlington County at Deborah Emergency Medicine due to complaints of rectal bleeding and pelvic pain. Subsequently transferred back to RWJ Hospital with a final diagnosis of "Non-Thrombosed External Hemorrhoids" and "Bleeding Internal Hemorrhoids".

25. Ravi Sood, MD (Dr. Sood) signed off on Mr. Brinkley's hemorrhoid diagnosis.

12. Mr. Brinkley was prescribed and received treatment for hemorrhoids

13. No other diagnostic testing was done at that time.

14. Mr. Brinkley's condition was not improved by the hemorrhoid medication

15. It is well established among many professionals that rectal bleeding can be an indicator of colon cancer.

16. Mr. Brinkley was 51 years old; the age medical professionals recommend that men be screened for colon cancer.

17. Despite his age and rectal bleeding, no colonoscopy to detect colon cancer was ordered at this time.

18. Over the next few weeks, Mr. Brinkley was rapidly losing weight and in excruciating pain. Mr Brinkley's condition continued to deteriorate and this was apparent to other prisoners and staff noting a 40 lb weight loss.

25. On August 15, 2017, BOP medical staff ordered that a colonoscopy be performed as soon as possible.

26. On September 11, 2017, over three months after reporting the rectal bleeding, Mr. Brinkley received a colonoscopy.

27. The colonoscopy revealed a polyp.

28. A biopsy was not performed on the polyp.

29. The Utilization Review Committee (URC) at FCI Fort Dix is responsible for making determinations about which diagnostic tests and medical procedures are performed. The URC at FCI Fort Dix is chaired by Clinical Director xxxx.

31. On October 8, 2017 Mr Brinkley drafted a grievance addressed to David Ortiz, Ceo Joint Base M.D.L. begging for emergency medical treatment for hemorhoids fearing for the loss of his life.

29. On October 19, 2017, Dr. Sood continued to treat Mr. Brinkley for hemorrhoids.

30. Dr. Sood saw nothing remarkable during his examination of Mr. Brinkley.

32. Testing administered by BOP Medical staff that same month in October indicated that Mr. Brinkley's lungs were clear.

33. Five weeks later, on November 27, 2017, Mr. Brinkley's medical condition was so dire that he was transported to an outside hospital.

34. The following day, Mr. Brinkley was diagnosed with stage 4 lung cancer.

35. Mr. Brinkley died alone on January 05, 2018.

36. During the last five weeks of his life, Mr. Brinkley was continuously handcuffed and shackled to the hospital bed.

37. Being handcuffed and shackled to the bed exacerbated the discomfort and pain that Mr. Brinkley was experiencing.

38. Mr. Brinkley was convicted of a non-violent offense and serving a relatively short sentence.

39. Mr. Brinkley was very close to death and not physically able to run or move very much at all.

40. Warden Ortiz was responsible for establishing and enforcing security procedures for terminally ill prisoners receiving treatment at medical facilities outside of the prison.

41. During the last five weeks of his life, Mr. Brinkley's family members were prevented from visiting him.

42. On January 2, 2018, Mr. Brinkley's children and certain family members were able to see him.

43. This visit was the only time Mr. Brinkley was permitted to see his family.

44. Warden Ortiz had a duty to monitor Mr. Brinkley's condition in order to authorize appropriate and humane security measures.

45. Mr. Brinkley was eligible under the First Step Act to be released prior to the expiration of his 48-month sentence.

46. The First Step Act has a provision that allows for certain terminally ill prisoners to be placed on home confinement.

47. Warden Ortiz had the authority to recommend that Mr. Brinkley be released to home confinement under the Compassionate Release provision of the First Step Act.

47. The BOP has a policy of preventing outside hospital staff from providing medical information to the family members of individuals who have a serious medical condition.

48. This policy is enforced even in cases where the prisoner is very close to death.

49. Mr. Brinkley's family received very limited information about his condition and prognosis.

50. If Mr. Brinkley's cancer had been diagnosed in May 2017, when his symptoms first appeared, he could have received treatment that may have extended his life.

51. BOP medical personnel had a duty to diagnose and treat Mr. Brinkley's cancer.

52. The medical examiner indicated that cancer was found in Mr. Brinkley's lungs, liver and brain.

53. The autopsy performed on Mr. Brinkley was limited in scope and did not comment on the progression or origin of his cancer.

## CAUSE OF ACTION

## COUNT I

### Federal Tort Claims Act - Negligence

1. DOCTORS owed a duty to Mr. Brinkley, breached their duty to him, and, as such, were a direct and proximate cause and a substantial factor in bringing about Mr. Brinkley's suffering, untimely death and his heir's damages outlined above.

2. The actions of DOCTORS constitute the tort of negligence under the laws of the state of New Jersey.

3. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

Respectfully Submitted,

*[signature]*



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*Via Certified and Return Receipt Mail*

U.S. Custom House-7th Floor
2nd & Chestnut Streets
Philadelphia, PA 19106

October 20, 2020

Taqiyyah Miller
Tameer Miller
7743 Oxford Avenue, Apt. A
Philadelphia, PA    19111

    RE: Administrative Claim No. TRT-NER-2020-01660
          Reg. No. 08700-015

Dear Ms. Miller:

    Administrative Claim No. TRT-NER-2020-01660, properly received in this office on November 25, 2019, has been accepted and considered for settlement as provided by the Federal Tort Claims Act, 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek $20,000,000.00 for a personal injury claim. Specifically, you allege on January 5, 2018, Mr. Brinkley died of cancer due to the lack of proper medical care at FCI Fort Dix.

    An investigation, including a review of the deceased's medical records, reflects there is not sufficient evidence to substantiate the allegations of this claim. There is no evidence you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. Accordingly, your claim is denied.

    If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter.

                                              Sincerely,

                                              Darren Howard
                                              Regional Counsel

cc: David E. Ortiz, Warden, FCI Fort Dix