PHILIP R. SELLINGER
United States Attorney
By: MARGARET A. MAHONEY
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2761
Email: Margaret.ann.mahoney@usdoj.gov

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF LAWRENCE BRINKLEY, deceased, by and through, Taquiyyah Miller and Tameer Miller, Administrators of the Estate of Lawrence Brinkley, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> *Defendant*. | HON. RENÉE MARIE BUMB <br><br> Civ. No. 21-cv-09955 (RMB)(MJS) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR RECONSIDERATION

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
*Attorney for Defendant*

MARGARET ANN MAHOEY
Assistant United States Attorney

<u>TABLE OF CONTENTS</u>

Preliminary Statement ........................................................................................... 1

Factual Background and Procedural History ......................................................... 2

    I.    Allegations in the Complaint .......................................................... 2

    II.   Defendant's Motion and the Court's Decision ................................ 3

Argument ............................................................................................................... 6

    I.    Legal Standards Governing The Common Knowledge Exception to the
        Affidavit of Merit Requirement ..................................................... 6

    II.   The Court Overlooked Recent Third Circuit, District of New Jersey and
        New Jersey Supreme Court cases that hold the Common Knowledge
        Exception to the Affidavit of Merit Requirement Does Not Apply to
        Claims Such as the Ones presented In This Case ........................ 10

        a.  Third Circuit ........................................................................ 10

        b.  Supreme Court of New Jersey ............................................. 11

        c.  District Court of New Jersey ............................................... 13

    III.  The Common Knowledge Exception does not apply in this case ................. 20

Conclusion .......................................................................................................... 22

TABLE OF AUTHORITIES

**Cases**

*Bender v. Walgreen Eastern Co., Inc.,*
 399 N.J. Super. 584 ...................................................................................8

*Bornstein v. Monmouth Cty. Sheriff's Office,*
 658 F. App'x 663 (3d Cir. 2016) ................................................................7

*Burns v. Belafsky,*
 166 N.J. 466 .............................................................................................6

*Cowley v. Virtua Health Sys,*
 242 N.J 1 (N.J. 2020) ....................................................................... passim

*Dasaro v. County of Monmouth,*
 832 Fed App'x 788 (3d Cir 2020) ...................................................10, 11

*Estate of Allen v. Cumberland County,*
 262 F. Supp. 3d 112 (D.N.J. 2017) ..........................................14, 15, 16

*Estate of Chin v. Saint Barnabas Medical Center,*
 160 N.J. 454 (N.J. 1999) ...........................................................8, 17, 19

*Fontanez v. U.S.,*
 24 F. Supp 3d 408 (D.N.J. 2014) ...............................................4, 16, 17

*Frontier Dev. LLC v Craig Test Boring Co, Inc.,*
 No. 16-778, 2017 WL 4082676 (D.N.J. Sept. 15, 2017)...........................7

*Gonzalez v. New Jersey Dept of Children and Families,*
 545 F. Supp. 3d. 178 (D.N.J. 2021) ........................................................17

*Grimes v. Correctional Medical Servs.,*
 No. 08–567, 2010 WL 503031 (D.N.J. Feb. 8, 2010) .............................19

*Hernandez v. Cullison,*
 No. 05–3038,  2006 WL 1804579 (D.N.J. June 26, 2006) ....................20

*Horne v. United States,*
 223 F. App'x 154 (3d Cir. 2007) ...............................................................3

*Hubbard ex rel. Hubbard v. Reed,*
 168 N.J. 387 (N.J. 2001)........................................................................7, 8

*Jackson v. Fauver,*
 334 F. Supp. 2d 697 (D.N.J. 2004)..........................................................18

*Natale v. Camden Cnty. Corr. Facility,*
 318 F.3d 575 (3d Cir. 2003).................................................................7, 17

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum-Smith Brown, P.C.,*
 692 F.3d 283 (3d Cir. 2012)..................................................................4, 6

*Palanque v. Lambert-Woolley,*
 168 N.J. 398 (N.J. 2001)...........................................................................8

*Rosenberg v. Cahill,*
 99 N.J 3185 (N.J. 1985...........................................................................7, 12

*Sanzari v. Rosenfeld,*
 34 N.J. 128 (N.J. 1961)..............................................................................7

*Schueler v. Strelinger,*
 43 N.J. 330 (N.J.1964)........................................................9, 12, 13, 22

*Sellow v. Nwachukwu,*
 No. 18-13820, 2023 WL 157432 (D.N.J. January 11, 2023) ............................13, 14

*Snyder v. Pascack Valley Hosp.,*
 303 F.3d 271 (3d Cir. 2002)....................................................................3, 6

*Vitale v. Carrier Clinic, Incorporated,*
 409 F. App'x 532 (3d Cir. 2010) ............................................................3, 6

**Statutes**
N.J.S.A. 2A:53A-27 ...............................................................................1, 3, 6
N.J.S.A. 2A:53A-29 .............................................................................4, 6, 22

**Rules**
L. Civ. R. 7.1(i) ..........................................................................................1

<u>PRELIMINARY STATEMENT</u>

Defendant the United States of America respectfully submits this memorandum of law in support of its motion for reconsideration of the opinion and order issued by the Court on December 27, 2022, which granted in part and denied in part the Defendant's motion to dismiss the complaint filed by the Administrators of the Estate of Lawrence Brinkley, Taquiyyah and Tameer Miller ("the Administrators" or "Plaintiffs") for failure to comply with New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-27.  *See* ECF No. 38.  Specifically, the Court held that the common knowledge exception to the affidavit of merit requirement applied to some of Plaintiffs' legal theories and therefore they could proceed with their claims based on a delay in providing medical evaluation and treatment, but not on their claims regarding the evaluation and treatment required by the professional standard of care. *Id*. at 9.   Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters which the party "believes the [Court] overlooked" when it ruled on a motion.  L. Civ. R. 7.1(i).  Moreover, the Court held in the Opinion, that "[b]ecause Plaintiffs did not raise the specific common knowledge exception found by this Court, Defendant may file a motion for reconsideration, within 14 days of the date of the order, to address the issue." ECF No. 38 at 9.  The Court granted Defendant an extension to file the motion for reconsideration until February 9, 2023.  ECF No. 41.

The Government respectfully submits that the Administrators' claims do not fall within the narrowly-construed common knowledge exception to the affidavit of merit requirement because their allegations that BOP staff deviated from the

appropriate standard of care would not be readily apparent to jurors of ordinary intelligence and experience.  Although the Court considered and ruled that no extraordinary circumstances exist to excuse Plaintiffs' failure to supply an affidavit of merit and ruled that Plaintiffs had notice of Defendant's intent to raise the affidavit of merit defense, it appears to have overlooked recent Third Circuit, District of New Jersey, and New Jersey Supreme Court case law supporting Defendant's position.  Because the Court appears to have overlooked the arguments and case law related to these issues, we respectfully seek reconsideration of the December 27, 2022 order, and ask the Court to dismiss the complaint for failure to supply an affidavit of merit for the reasons set forth in the Defendant's prior letter-brief as well as the reasons set forth below.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

I.    <u>Allegations in the Complaint</u>

As the Court is aware, the Administrators bring this medical malpractice action for personal injury and wrongful death on behalf of their father, Lawrence Brinkley, a former inmate incarcerated at the Federal Correctional Institute at Fort Dix ("FCI Fort Dix") from December 2016 to January 5, 2018. ECF No. 1  Compl. ¶ 1.  Plaintiffs allege that FCI Fort Dix employees deviated from accepted standards of care in treating Mr. Brinkley's stage 4 lung cancer. *Id*. at  ¶¶ 7–53;  Count 1 ¶ 1.  Specifically, the Court has characterized Plaintiffs' complaint as raising three claims: [1] that the delay in providing their father with a medical evaluation, constituted a failure to exercise the appropriate standard of care and that it is within

the common knowledge of a layperson to determine whether that delay violated the professional standard of care; [2] that medical professionals at Fort Dix violated the appropriate standard of care when they did not follow an emergency room doctor's treatment recommendation; and [3] that is it within the common knowledge of a lay person to determine whether an approximate one month delay in providing a colonoscopy violated the professional standard of care when the test was order by an emergency room doctor "as soon as possible." ECF No. 38 at 8-9.

## II.    Defendant's Motion and the Court's Decision

On May 2, 2022, Defendant filed a motion to dismiss the Administrator's complaint for failure to submit an affidavit of merit within sixty days of the answer. *See* N.J.S.A. 2A:53A-27; *accord Horne v. United States*, 223 F. App'x 154, 156 (3d Cir. 2007) (holding that *pro se* plaintiffs are required to submit an affidavit of merit in an FTCA action).[1]    Defendant argued that in order to proceed with their medical malpractice claims, Plaintiffs must submit "an affidavit of an appropriate licensed person" concerning whether the disputed treatment "fell [below] acceptable professional or occupational standards or treatment practices." *Id*. The affidavit of merit statute requires "plaintiffs to make a threshold showing" of merit, *Vitale v. Carrier Clinic, Incorporated,* 409 F. App'x 532, 533 (3d Cir. 2010) (citation omitted), in order "to dispose of meritless malpractice claims early in the litigation and to allow meritorious claims to move forward unhindered." *Snyder v. Pascack Valley*

---

[1]    As of May 2, 2022, 210 days had passed since the Defendant filed its Answer requesting an affidavit of merit.

*Hosp.,* 303 F.3d 271, 274 (3d Cir. 2002) (internal citations omitted). Defendant further argued that when a *pro se* plaintiff fails to timely file an affidavit of merit, courts have "considered whether the failure to comply with the filing deadline resulted from carelessness, lack of circumspection, lack of diligence, [] ignorance of the law [,] or failure to seek legal advice." *Fontanez v. U.S.*, 24 F. Supp. 3d 408, 414 (D.N.J. 2014) (internal quotations omitted). But *pro se* status alone does not constitute an extraordinary circumstance excusing the timely filing of an affidavit of merit. *Id.* Moreover, the failure to file a timely affidavit of merit generally "requires dismissal of the action with prejudice." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum-Smith Brown, P.C.*, 692 F.3d 283, 305 (3d Cir. 2012); *see also* N.J.S.A. 2A:53A-29 (setting forth the consequence for a plaintiff's failure to provide an affidavit of merit).

On July 29, 2022, the Administrators filed a response opposing the Defendant's motion. ECF No. 31. In it they argued that their *pro se* status created an extraordinary circumstance such that the Court should excuse their failure to provide an affidavit of merit but offered no analysis or caselaw in support of their assertion. *Id.* at 1. Plaintiffs further argued that the Court should excuse their failure to provide an affidavit of merit on equitable grounds ("laches / equitable estoppel") because Defendant "did not raise the issue of the missing affidavit of merit during conference calls" and "sat on their right to assert the affidavit of merit defense by several months." *Id.* at 1-2. Finally, at the end of their response, Plaintiffs briefly mention the common knowledge exception to the affidavit of merit statute by simply

stating, "[i]n a case where the plaintiff will not present expert testimony to establish negligence, but instead will rely on the common knowledge exception, the plaintiff is not required to provide an affidavit of merit prior to trial in order to demonstrate that his or her claim meets the threshold for merit." *Id*. at 2. Again, Plaintiffs offered no analysis or caselaw supporting their belief that the alleged negligence of the medical staff at FCI Fort Dix fits within the very narrow common knowledge exception to the affidavit of merit requirement.

On December 27, 2022, the Court granted in part and denied in part the Defendant's motion to dismiss. The Court held that Plaintiffs' *pro se* status did not justify noncompliance with the statute nor did it create an extraordinary circumstance that prevented them from obtaining an affidavit of merit. ECF No. 38 at 7. Next, the Court held that it would not excuse Plaintiffs' failure to file an affidavit of merit based on equitable estoppel or laches grounds as Defendant's Answer to the Complaint demanded an affidavit of merit and put Plaintiffs on notice of Defendant's intent to raise the affidavit of merit defense if they did not do so. *Id*. The Court then held that the common knowledge exception applies to some but not all of Plaintiffs' allegations of negligence. *Id*. at 8. Specifically, the Court held that Plaintiffs may proceed on their claims of "delay in providing evaluation and treatment, but not on their claims of what evaluation and treatment was required by the professional standard of  care." *Id*. at 9. However, it appears the Court did not consider recent Third Circuit, District Court of New Jersey, and New Jersey Supreme Court cases that support dismissal of this matter.

5

## ARGUMENT

I.  <u>Legal Standards Governing The Common Knowledge Exception to the Affidavit of Merit Requirement</u>

"In any action for damages for personal injuries" resulting "from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," the New Jersey affidavit of merit statute requires the plaintiff to provide "an affidavit of an appropriate licensed person" concerning whether the disputed treatment "fell [below] acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A–27. The affidavit of merit statute therefore requires "plaintiffs to make a threshold showing" of merit, *Vitale v. Carrier Clinic, Incorporated,* 409 F. App'x 532, 533 (3d Cir. 2010) (citation omitted), in order " 'to dispose of meritless malpractice claims early in the litigation'" and "'to allow meritorious claims to move forward unhindered.'" *Snyder v. Pascack Valley Hosp.,* 303 F.3d 271, 274 (3d Cir.2002) (quoting *Burns v. Belafsky,* 166 N.J. 466, _ (2001)).  It is well established that the failure to file a timely affidavit of merit generally "requires dismissal of the action with prejudice." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum–Smith Brown, P.C.,* 692 F.3d 283, 305 (3d Cir. 2012); *see also* N.J.S.A. 2A:53A–29 (setting forth the consequence for a plaintiff's failure to provide an affidavit of merit).

However, the Third Circuit recognizes four very limited exceptions for Plaintiffs' noncompliance with the affidavit of merit requirement. *Nuveen,* 692 F.3d at 305.  The limited exceptions are: "(i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii) an exception predicated upon

substantial compliance with the affidavit of merit requirement; and (iv) extraordinary circumstances that warrant equitable relief." *Id.* (citations omitted).

The New Jersey Supreme Court also recently confirmed that the common knowledge exception applies only in "exceptionally rare cases," as it "is construed narrowly 'to avoid noncompliance with the statute.'" *Cowley v. Virtua Health Sys*, 242 N.J 1, 17 (N.J. 2020) (quoting *Hubbard ex rel. Hubbard v. Reed*, 168 N.J. 387, 397 (N.J. 2001)). Moreover, the Third Circuit has similarly recognized that "it is the unusual professional malpractice case in which the common knowledge doctrine can be invoked." *Bornstein v. Monmouth Cty. Sheriff's Office*, 658 F. App'x 663, 670 (3d Cir. 2016) (quoting *Rosenberg v. Cahill*, 99 N.J 318, 325 (N.J. 1985)).

To fall within the common knowledge exception, the wrongful nature of the defendant's alleged conduct must be "readily apparent to anyone of average intelligence and ordinary experience" and must be unrelated "to technical matters peculiarly within the knowledge of the licensed practitioner." *Cowley*, 242 N.J. at 17 (quoting *Rosenberg,* 99 N.J. at 325); *Sanzari v. Rosenfeld*, 34 N.J. 128, 142 (N.J. 1961)); *Frontier Dev. LLC v Craig Test Boring Co, Inc.*, No. 16-778, 2017 WL 4082676, at *16 (D.N.J. Sept. 15, 2017) (the common knowledge exception only applies where "jurors['] common knowledge as laypersons is sufficient to enable them, using ordinary understanding and experience, to determine defendants' negligence without the benefit of specialized knowledge of experts."); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579-80 (3d Cir. 2003) (noting that the

common knowledge exception only applies where "[n]o special expertise or expert testimony is needed to show, at the outset of a case, that the claim is not frivolous").

Plaintiffs' claims in this case differ from the types of claims that courts have found fall into the common knowledge exception. For example, in *Hubbard v. Reed*, 168 N.J. 387, 397 (N.J. 2001) (citations omitted), the court held that the common knowledge exception applied where the wrong tooth was pulled because it "has long been settled that pulling the wrong tooth is negligent as a matter of common knowledge." In *Bender v. Walgreen Eastern Co., Inc.*, 399 N.J. Super. 584, 591 (App. Div. 2008), the court found that the common knowledge exception applied where a pharmacist filled a prescription with a drug that was not prescribed. In *Palanque v. Lambert-Woolley*, 168 N.J. 398, 400 (N.J. 2001), the court held that the common knowledge exception applied where a doctor misread two pregnancy tests as indicative of an ectopic pregnancy because he carelessly read the laboratory report identification numbers as MIU/ML measurements. Lastly, in *Estate of Chin v. Saint Barnabas Medical Center*, 160 N.J. 454, 460 (N.J. 1999), the court found that the common knowledge exception applied where a gas line was connected to a patient's uterus, rather than a water line, leading the patient to suffer from an air embolism during a diagnostic hysteroscopy.

All these cases share a common thread: the nature of the impropriety was so obvious and clearly connected to the harm suffered by the plaintiffs that a layperson's common knowledge was sufficient to conclude that a deviation from the standard of care occurred. That is not so in the present case. The present case

requires the trier-of-fact to determine the appropriate standard of a care in the hierarchal setting of a multi-disciplinary medical team providing care to inmates in a federal prison. Here, various doctors, nurses, and other medical professionals evaluated and diagnosed Mr. Brinkley at FCI Fort Dix over an extended period of time. This is not a situation where staff ignored Mr. Brinkley or refused him care. Nor is it a situation where one action, such as filling a prescription with the wrong drug or reading a lab test incorrectly or connecting a gas line instead of a liquid line, resulted in his death. An expert is needed to explain what policies, procedures and practices are supposed to be followed by medical professionals in a multi-hierarchical prison environment - that information is not within the common knowledge of the average layperson. In addition, an expert is needed to establish that the alleged deviation from the standard of care caused their father's death- again, that information is not within the common knowledge of the average layperson. A layperson, with no medical training, cannot know whether a one month delay in obtaining a colonoscopy resulted in Mr. Brinkley's death from stage four lung cancer a few months later. An expert is needed to ensure that the jurors do not speculate.

Significantly, well-established New Jersey Supreme Court precedent requires Plaintiffs to present expert testimony to establish what policies, procedures, and practices medical professionals are supposed to follow as "a jury of laymen cannot be allowed to speculate as to whether the procedure followed by a [defendant professional] conformed to the required professional standards." *Cowley,* 242 N.J. 1, 19 (citing *Schueler v. Strelinger,* 43 N.J. 330, 345 (N.J.1964)).

9

Moreover, Plaintiffs' self-serving commitment in its reply brief not to use a medical expert to prove its case, does not bring their claims within the ambit of the common knowledge exception. The New Jersey Supreme Court has emphasized that in most medical malpractice cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant and has held that the wise course of action in all medical malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial. Cowley, 242 N.J. at 19.

II.    <u>The Court Overlooked Recent Third Circuit, District of New Jersey and New Jersey Supreme Court cases that hold the Common Knowledge Exception to the Affidavit of merit Requirement Does Not Apply to Claims Such as the Ones Presented In This Case.</u>

a. **Third Circuit**:

In *Dasaro v. County of Monmouth*, 832 Fed App'x 788 (3d Cir 2020), the Third Circuit affirmed the District Court's dismissal of medical malpractice claims for failure to serve an affidavit of merit. The Third Circuit agreed that the common knowledge exception to affidavit of merit and expert-testimony requirements under New Jersey law did not apply to a negligence action brought by a wife seeking damages for the death of her husband, who committed suicide while detained in a county correctional institution. The Plaintiff in *Dasaro* claimed that the prison medical professionals should have identified that her husband was at risk for suicide. The record established that the decedent had received care and underwent evaluation by an in-take nurse at the prison. As a result, the District Court held, and the Circuit agreed, that this was not a case where Defendants failed to evaluate

10

the decedent altogether, or failed to follow the regular policies, procedures and practices established by their institution such that the Court could reasonably infer negligence.  Moreover, the Court found that it would not be readily apparent to a person of average intelligence that there was a breach of the duty of care.  As such, the Court found that the common knowledge doctrine did not apply.

In this case, just as in *Dasaro*, the medical professionals at Fort Dix evaluated and provided treatment to Mr. Brinkley on numerous occasions.  He was sent to the hospital multiple times for outside assessments. As a result, an expert is needed to explain if and how the medical professionals at Fort Dix deviated from the appropriate standard of care and if any "delay" in treatment was appropriate given the circumstances. In addition, an expert is needed to explain the accepted policies, procedures and practices governing the standard of care provided by medical professionals in this case. That knowledge is not readily apparent to a person of ordinary understanding and experience without the assistance of an expert.

b. **Supreme Court of New Jersey**:

In *Cowley v. Virtua Health Sys.,* 242 N.J, 1 (N.J. 2020), a patient filed suit against various medical professionals, a hospital, and a health care system, asserting claims for medical malpractice arising out of the nurses' alleged failure to take action to ensure compliance with physician's order for insertion of naso-gastric tube, after the patient personally removed the tube and refused to allow reinsertion. The Defendant answered and demanded affidavits of merit, and then moved to dismiss when the plaintiff did not serve any affidavits within statutory time

limit. The plaintiff asserted that she did not have to serve an affidavit of merit because the common knowledge exception applied. The Supreme Court of New Jersey disagreed and held that the allegations in the complaint did not qualify for the common knowledge exception.

The court emphasized that the common knowledge exception applies only in "exceptionally rare cases" and in "exceptional circumstances." *Id.* at 17. Specifically, the court held that, "in the hierarchal setting of a multi-disciplinary medical team providing care to a hospitalized patient, . . . [in order] [t]o assess a deviation in the standard of care in such a setting, one must know the procedures, protocols, and scope of duties of the licensed professional nurses in such circumstances. An expert is required for that explanation. Such information is outside of the realm of common knowledge." *Id.* 20. The court continued that, "[b]ecause of the innate complexities of medical malpractice actions, such issues do not usually fall within the common knowledge of an average juror." *Id.* 19 (citing *Rosenberg*, 99 N.J. at 325). The court emphasized that it was critical that a jury of laymen not "be allowed to speculate as to whether the procedure followed by a [defendant professional] confirmed to the required professional standards." *Id.* at 19. (citing *Schueler v. Strelinger*, 43 N.J. 330, 345 (N.J. 1964)).

This case is directly analogous to *Cowley*. Here the alleged negligence occurred in the hierarchal setting of a multi-disciplinary medical team providing care to an incarcerated patient. Just as in *Cowley,* in order for an average laymen to assess whether medical staff deviated from the standard of care in such a settling,

12

that laymen must know the appropriate procedures, protocols, and scope of duties of the licensed professionals working within the Bureau of Prisons.  Clearly, just as in *Cowley*, an expert is necessary to determine "the procedures, protocols, and scope of duties" of the medical professionals at Fort Dix who cared for Mr. Brinkley.  Jurors simply do not have the ordinary understanding and experience to identify what the medical standard of care requires in this situation. And, again, the jurors should not be allowed to speculate. *See Schuler*, 43 N.J. at 345.

c.  **District Court of New Jersey**:

In *Sellow v. Nwachukwu,* No. 18-13820, 2023 WL 157432, at *1 (D.N.J. January 11, 2023), a *pro se* state prisoner filed a lawsuit against a New Jersey State prison doctor alleging, among other things, that the defendant breached a duty of care by (1) denying medical treatment to the plaintiff for constipation; (2) by not following his surgeon's order; and (3) by delaying plaintiff's transport to the hospital after he fell.  Defendant filed a motion to dismiss or in the alternative motion for summary judgement based upon plaintiff's failure to file an affidavit of merit. Plaintiff argued that the court should excuse him from the affidavit of merit requirement due to (1) lack of information and (2) the common knowledge exception. The district court held that it was evident from the record that plaintiff did receive treatment throughout the relevant time period. Significantly, the District Court held, "[h]ow much treatment was necessary and when that treatment was necessary is a question for a medical expert. Proper practices following back surgery are not within the common knowledge of an average person. The Court concludes these are

13

not claims that fall within the exceptionally rare instances 'where a person of reasonable intelligence can use common knowledge to determine that there was a deviation from a standard of care." *Id.* at *6 (quoting *Cowley*, 242 N.J. at 17.)

The facts in this case are very similar to the facts in *Sellow*. Here, Plaintiffs allege that BOP staff delayed in sending Mr. Brinkley to get a colonoscopy and failed to follow certain orders from emergency room medical professionals. And, just as in *Sellow*, Plaintiffs acknowledge that their father did receive treatment from the medical professionals at Fort Dix during the relevant time period. *See* ECF No. 1 at ¶¶ 12, 21, 24, 25, 26, 29, 30, 32, 33. As a result, this Court should similarly find that "how much treatment was necessary and when that treatment was necessary is a question for a medical expert." *Id.* The proper practice after an inmate finds blood in their stool or the procedures for scheduling and obtaining a colonoscopy for an incarcerated person do not fall within the common knowledge of an average person. As a result, this Court should also find that the claims in this case do not fall within the "exceptionally rare" circumstances where the common knowledge exception can apply.

In *Estate of Allen v. Cumberland County*, 262 F. Supp. 3d 112, 116-18 (D.N.J. 2017), the estate filed a professional negligence claim against a nurse for conducting a deficient psychological examination of the decedent, who committed suicide two days later. *Id.* at 113. Tasked with determining whether the common knowledge doctrine should apply, the District Court explained that allegations that a nurse failed to "evaluate *properly*" the decedent fell beyond the scope of the doctrine. *Id.* at

*10–12 (emphasis in original). The Court noted that, unlike typical common knowledge claims, the plaintiff did not allege that the nurse failed to evaluate the decedent at all or that she ignored any mention of the decedent's suicidal thoughts. *Id.* at 117. As such, the District Court concluded, "[a]n expert . . . is precisely what lay finders of fact would need: to describe the standard of nursing care applicable to the evaluation of [the decedent] under these circumstances, and that there is a reasonable probability that [the nurse] breached that standard." *Id.*   The court concluded, "without an elucidation of what made [the nurse's] evaluation improper, and without clarity as to how that alleged breach of [the nurse's] duty led to the harm complained of, a jury of laypersons would not be able, using ordinary understanding and experience, determine [the nurse's] negligence without the benefit of specialized knowledge or experts." *Id.*at 112, 117-118.  The district court concluded, "An expert, of the type specified by the AOM Statute, is precisely what lay finders of fact would need: to describe the standard of nursing care applicable to the evaluation of [the decedent] under these circumstances, and that there is a reasonable probability that [the nurse] breached that standard." *Id.*

Plaintiffs in this case allege similar negligence as the Plaintiff in *Allen*. Both assert that the care the decedent received was deficient in some manner.  And, like the *Allen* Plaintiff, Plaintiffs in the case acknowledge in the complaint that their father received care from the medical professional at FCI Fort Dix during the relevant time period.  *See* ECF No. 1 at ¶¶ 12, 21, 24, 25, 26, 29, 30, 32, 33. Therefore,

this Court should draw the same conclusion as the *Allen* court – an expert is precisely what lay factfinders need: to describe the standard of care applicable to the FCI Fort Dix medical professionals who evaluated and treated the decedent under the circumstances of this case and to explain whether or not there is a reasonable probably that those medical professionals breached that standard. Because, just as in *Allen*, without an elucidation of what made the FCI Fort Dix medial professionals' actions or inactions improper, and without clarity as to how their alleged breach of duty led to the harm complained of, lay factfinders of ordinary understanding and experience would not be able to determine what, if any, negligence occur without the benefit of specialized knowledge or experts.

In *Fontanez v. United States*, 24 F. Supp 3d. 408, 410 (D.N.J. 2014), a prisoner alleged that he was negligently treated for a fracture, rather than a broken bone, after injuring his ankle playing in a prison softball game and that his original requests to see an orthopedist were denied. Plaintiff was ultimately seen by a specialist who determined he did in fact have a broken bone which required corrective surgeries. Plaintiff failed to file an affidavit of merit and Defendant moved to have the matter dismissed. Plaintiff responded that he was excused from the requirement as his allegations, among other things, fell within the common knowledge exception. *Id* at 412-413. The Court rejected the Plaintiff's assertion and confirmed that the common knowledge exception "narrowly applies to 'readily apparent' negligence" *Id*. at 413. The Court pointed out that, "Plaintiff delineates a series of purported errors, spanning multiple days and concerning actions by

multiple parties." *Id*. And held that, [t]he purported negligence of the Defendants in this action does not fit within [the common knowledge exception]." *Id*.

As in *Fontanez*, Plaintiffs in this case also allege a series of purported errors, spanning multiple months (not days) and concerning actions by multiple FCI Fort Dix medical professionals. And, as in *Fontanez*, Plaintiff in this case have offered no support for their ascertain that their claims establish a series of carless and obvious errors which do not require the specialized knowledge of experts. As a result, this Court should similarly find that the allegations here do not fit within the narrowly applied common knowledge exception.

In *Gonzalez v. New Jersey Dept of Children and Families*, 545 F. Supp. 3d. 178, 192 (D.N.J. 2021), the biological mother of a 16-month old child placed in foster care brought a case arising out of the child's death from blunt force trauma to the brain while in foster care. The plaintiff asserted one claim against a doctor arising out of her failure to report the suspected child abuse and the doctor moved to dismiss for failure to file an affidavit of merit. In its opinion, the Court held that under New Jersey law, the "common knowledge" exception is "applied narrowly" and only "to cases that 'involve obvious or extreme error." *Id*. at 236 (quoting *Cowley*, 242 N.J. 19 ("Because of the innate complexities of medical malpractice actions, such issues do not usually fall within the common knowledge of an average juror." *Estate of Chin by Chin v. St. Barnabas Med. Ctr.*, 160 N.J. 454, 471 (N.J. 1999) (requiring that the "mistake was obviously the result of negligence"); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) (expert affidavit required unless

"defendant's careless acts are quite obvious"). The court went on to explain, "[t]here is good reason for [the affidavit of merit] requirement. Absent expert testimony which gives context to a doctor's decisions, it can be difficult for a jury to fully understand whether a doctor complied with a relevant standard of care." *Id.* The court emphasized that, "[w]ithout expert testimony to provide relevant context, it is difficult for laypersons to know what a doctor could or could not infer based on his or her medical expertise." *Id.* The court concluded by stating that, "[t]he courts will monitor closely the invocation of the "common knowledge" exception in order to ensure that it is not being used to circumvent the requirement of expert evidence" and that apart from "obvious or extreme cases" "a plaintiff must come forward with expert testimony." *Id.*

Some courts within the District of New Jersey have held that the common knowledge exception to the affidavit of merit requirement applies based upon similar allegations of negligence. However, they are easily distinguishable from this case. For example, in *Jackson v. Fauver,* 334 F. Supp. 2d 697, 743 (D.N.J. 2004), the Court held that the common knowledge exception applied where incarcerated plaintiffs complained that they were not provided with prescribed medications in a timely fashion. All of the allegations in *Jackson* simply involved defendants' failure to provide medical care prescribed for them by their treating specialists and to follow the medical instructions of these specialists. *Id* at 743. The instant case does not involve FCI Fort Dix medical personnel simply refusing to comply with a physician's instructions. Rather, this case deals with various medical professionals' judgments

as to the proper treatment for the conditions Mr. Brinkley presented, namely blood in the stool and weight loss, a question that undoubtedly requires expert testimony. Further, the FCI Fort Dix medical professionals' decisions to conduct numerous examination and tests on Mr. Brinkley and to send him to the hospital on numerous occasions for assessment with specialists does not smack of obvious negligence. Whether and what tests to order and when to send Mr. Brinkley to the hospital are themselves issues that require expert testimony, to say nothing of whether or not those decisions contributed to the harm alleged in this case, namely Mr. Brinkley's death from stage-four lung cancer.

In *Grimes v. Correctional Medical Servs.,* No. 08–567, 2010 WL 503031 (D.N.J. Feb. 8, 2010), the court held that common knowledge exception to the affidavit of merit requirement applied where the defendants failed to provide plaintiffs with medications prescribed by their doctors. The allegations in *Grimes* are not analogous to the facts in this case.  *Grimes* involved a *failure* to provide prescribed medication to inmates.  Here, Plaintiffs acknowledge that their father received medical treatment but allege that the medical professionals improperly evaluated the tests he needed and when he needed them.  It is clear that, "[w]ithout an elucidation of what made [the FCI Fort Dix medical professionals'] evaluation improper, and without clarity as to how that alleged breach of [their] duty led to the harm complained of, a jury of laypersons would not be able, "using ordinary understanding and experience, to determine [the FCI Fort Dix medical

professionals'] negligence without the benefit of specialized knowledge or experts." *Estate of Chin v St. Barnabas Med. Cntr,* 160 N.J. 454, 469 (N.J 1999)

And in *Hernandez v. Cullison,* No. 05–3038,  2006 WL 1804579 * 1 (D.N.J. June 26, 2006), an inmate alleged negligence after prison staff failed to provide him with medical treatment in a timely manner for a shoulder injury he suffered during a fight with another inmate.  The Court held that the plaintiff need not provide an affidavit of merit as the common knowledge exception applied under the facts of the case. *Id* at 15. However, the facts that the *Hernandez* court found compelling do not exist in the present case.  In *Hernandez*, the prison officials failed to schedule surgery almost six months after they knew the severity of Plaintiff's injuries. The Court noted there was no explanation given to account for the delay and there was no indication that any alternative course of treatment was attempted.  Here, medical staff at FCI Fort Dix provided Mr. Brinkley with various evaluations and treatments for the symptoms he exhibited. *See* ECF No. 1 at ¶¶ 12, 21, 24, 25, 26, 29, 30, 32, 33. It is not within the ordinary experience or knowledge of a lay factfinder to determine whether a delay of a few weeks in obtaining a colonoscopy for an incarcerated individual constitutes a breach of the standard of care.  An expert is needed.

## III.    <u>**The Common Knowledge Exception does not apply in this case**</u>

As the above cases demonstrate, the common knowledge exception does not apply to this case.  Courts have consistently declined to apply the common knowledge exception when medical malpractice cases involve questions about the procedures, protocols, and scope of duty of licensed professionals.

Each of Plaintiffs' claims requires an expert to explain the appropriate standard of care and identify how the medical professionals at FCI-Fort Dix deviated from that standard. None of the claims involves an obvious mistake or apparent error that a person of reasonable intelligence could understand as medical negligence. This case is not one that simply deals with an alleged act of omission. Plaintiffs acknowledge in the Complaint that their father received care from the medical professional at Fort Dix. *Id*. However, it appears that their Complaint has cast an overly simplistic gloss of the alleged negligence in this case and, as a result, the Complaint distorts and misstates the inherent complexity of their claims. *See Cowley, 242 N.J. at 21* (rejecting an "approach [which] allows plaintiffs to circumvent the Affidavit of merit Statue by disguising complex negligence cases with common knowledge allegations as to acts of omission.").

In this case, by suggesting that a factfinder need only use their common sense to determine what actions the medical professionals should or should not have been taken, Plaintiffs ignore their obligation to establish the appropriate standard of a care in the hierarchal setting of a multi-disciplinary medical team providing care to inmates in a prison. An average factfinder cannot reasonably be expected to know how long of a delay in obtaining outside testing constitutes a deviation from the appropriate standard of care. Moreover, the average factfinder similarly would not know whether it was a deviation from the standard of care for the medical professionals at FCI Fort Dix, who treated Mr. Brinkley over an extended period of time, to make their own assessments regarding his treatment needs as opposed to

following the recommendations of an emergency room doctor who treated Mr. Brinkley for a short period of time.  It is well established that a factfinder cannot be allowed to speculate as to whether a procedure conformed to the required professional standards of care. *See Schueler,* 43 N.J. 330.  Allowing a factfinder to speculate that *some action* should have been taken, rather than requiring a determination of *what action* should have been taken to comply with the applicable standard of care, expands application of the common knowledge exception to speculation.  Thus, the common knowledge exception does not apply to these facts.

In this case, just as in *Cowley*, the hierarchal setting of a multi-disciplinary medical team providing care to inmates in a prison involves detailed policies, procedures, and practices that medical professionals must follow.  What those policies, procedures and practices are and how they are supposed to be implemented in a situation like the one here, is not within the common knowledge of the average layperson. "To assess a deviation in the standard of care in such settings, one must know the procedures, protocols, and scope of duties of the licensed professionals involved in such care situations. An expert is required for that explanation .  Such information is outside the realm of common knowledge."  *Cowley*, 242 N.J. 20**.**

## CONCLUSION

Pursuant to N.J.S.A. 2A:53A-29, where a plaintiff fails to provide an affidavit of merit within the statutorily mandated timeframe, it shall be deemed a failure to state a cause of action unless the plaintiff satisfies an exception to the affidavit of merit requirement. Here, Plaintiffs neither submitted an affidavit of merit nor satisfied an exception to that requirement. They therefore failed to state a cause of

action under N.J.S.A. 2A:53A-29, which requires dismissal with prejudice for noncompliance. For the foregoing reasons, the Court should dismiss the Plaintiffs' complaint for failure to supply an affidavit of merit and hold that their claims do not fall within the common knowledge exception to the rule.

Dated:  Newark, New Jersey
        February 9, 2023

                                    Respectfully submitted,

                                    PHILIP R. SELLINGER
                                    United States Attorney

                        By:    s/ *Margaret Ann Mahoney*
                                    MARGARET ANN MAHONEY
                                    Assistant United States Attorney
                                    *Attorneys for Defendant*


### Certificate of Service

I, Margaret Ann Mahoney, Assistant United States Attorney for the District of New Jersey, certify that on February 9, 2023, a copy of the Motion for Reconsideration was served via ECF, First Class Mail and Email to

**Taqiyyah and Tameer Miller
7743 Oxford Avenue, Apt A
Philadelphia, PA 19111
tyshamm@yahoo.com**


Dated: February 9, 2023
        Newark, New Jersey

                                    s/ *Margaret Ann Mahoney*
                                    MARGARET ANN MAHONEY
                                    Assistant United States Attorney